DECISION AND ORDER
PER CURIAM.
This case is an appeal of a June 9, 2011 order of the Tribal Court, Judge Jenny Lee Kronk presiding, declining to accept transfer of a child welfare case from the Emmet County Probate Court. The Appellants do not seek to overturn the actual declination of the request to accept transfer of the case from state court to tribal court. Instead, they seek to overturn the legal conclusions made by the Tribal Court which formed the basis for its reasons for declining the transfer request. In other words, the Appellants are challenging a Tribal Court opinion for reaching the right outcome, but for the wrong reasons. In this case, the Tribal Presenting Officer had moved to withdraw its petition to transfer jurisdiction of the case to the Tribal Court because the children had been reunited with their mother by the time of the Tribal Court’s transfer hearing. In accordance with motion to withdraw, the Tribal Court declined to transfer the case, but it incor *279 porated an unnecessary analysis into its opinion that relied upon several patently wrong legal conclusions. Although these legal conclusions can be understood as dicta due to the fact that the. Tribal Presenting Officer sought to withdraw his original petition to transfer, their potentially damaging impact on the Tribe’s exercise of law and order on its reservation are so far-reaching and severe that the Appellate Court is compelled to reverse the incorrect conclusions.
For the reasons described below, the Appellate Court overrules the legal conclusions of the Tribal Court and holds a) that the Tribe’s Reservation encompasses all lands included within those areas included within the definition of “Reservation” in Article III(H) of the LTBB Constitution; b) that all of the lands included within the Tribe’s Reservation as defined by the LTBB Constitution constitute land within a “reservation” as that term is used in the Indian Child Welfare Act; and c) that Sections V and VI of the LTBB Child Protection Statute are valid and binding on the Tribal Court, and are not preempted or otherwise in conflict with the Indian Child Welfare Act or the LTBB Constitution.
FACTS AND PROCEDURAL HISTORY
This is the second time that the Appellate Court has heard an appeal in this case involving a request to transfer jurisdiction of a child protective proceeding from Em-met County Probate Court to Tribal Court. The facts and procedural history are discussed below.
On March 30, 2011, the Appellate Court issued a decision in this case in which it held that the Tribal court was required to provide notice and conduct a hearing “pri- or to determining whether to accept the petition to transfer jurisdiction of the case.” The Appellate Court remanded the case to the Tribal Court for a factual determination of “whether the children were found or reside within the reservation boundaries.” The Appellate Court also held that the Tribal Court, acting as the Children’s Court, “must apply the relevant procedure for transfers of jurisdiction spelled out in the Child Protection Statute.”
Following the March 30, 2011 Order, the Tribal Court held a transfer hearing on April 26, 2011. The Tribal Presenting Officer moved to withdraw the Tribe’s Petition to Transfer because the children had already been returned to the care and custody of their mother by that date. Without argument or objection by the parties, the Tribal Court granted the motion from the bench.
On June 9, 2011, the Tribal Court issued its written opinion granting Appellant’s motion to withdraw. In that opinion, the Tribal Court found that the Tribe’s statutory assertion of jurisdiction over the children in this matter was inconsistent with Federal law and the Tribe’s own Constitution. The Tribal Court’s opinion disavowed the ongoing legal relevance of the Reservation boundary expressly defined within the LTBB Constitution. The opinion also held that Sections V and VI of the WOS 2009-004 Child Protection Statute were invalid and preempted by the Indian Child Welfare Act and unconstitutional under the LTBB Constitution.
ANALYSIS
A. Standard of Review
The Tribal Court’s June 9, 2011 Order Following Transfer Hearing incorporates legal conclusions that are patently wrong and seriously harmful to the Tribe’s ability to exercise jurisdiction within its Reservation boundaries. Under Appellate Proce *280 dure Rule 7.501, the Appellate Court reviews conclusions of law de novo.
R. The LTBB Reservation encompasses all lands included within the definition of “Reservation” in Article III(H) of the LTBB Constitution.
The Tribal Court’s June 9, 2011 Order concluded that the domicile of the children involved in this child protective proceeding was not within the Tribe’s Reservation under the LTBB Constitution. In what can only be characterized as an extreme act of haste and carelessness, Judge Rronk, writing for the Tribal Court, concluded that the children’s address in Harbor Springs, Michigan was not on the Reservation under tribal law because it could not find a definition of “Reservation” in Article III of the LTBB Constitution. The Tribal Court relied upon a typographical error in a printed copy of the LTBB Constitution that is no longer in use in which the description of LTBB Territory in Article IV(A) cross-referenced all lands and waters within the Reservation as defined in a non-existent Article III(I) of the LTBB Constitution. In fact, the term “Reservation” is defined in Article III(H) of the Constitution, and all copies of the Constitution, including the version with the typographical error which the Tribal Court used, included the full definition of “Reservation” at Article III(H). Incredibly, the Tribal Court overlooked this definition included in the Tribal Constitution. If it had used greater care and diligence, it would have recognized that the term “Reservation” is defined in Article III(H) as follows:
Unless otherwise specified in this Constitution “Reservation” means all lands within the boundaries of the reservations for the Little Traverse Bay Bands of Odawa Indians as set out in Article I, paragraphs third and fourth of the Treaty of 1855, 11 Stat. 621, plus any lands set out in Articles Second and Third of the Treaty of March 28, 1886, 7 Stat. 491, in the event that the 1836 reservation is determined to include lands which are not included within the 1855 reservation, plus any lands outside of those boundaries which are now or in the future declared to be Little Traverse Bay Bands of Odawa Indians reservation by the U.S. Department of Interior.
LTBB Constitution, Article III(H).
The Tribal Court is responsible for interpreting and enforcing the provisions of the LTBB Constitution. The Tribal Court is therefore required to recognize that, as a matter of tribal law, all lands within the areas encompassed within the definition of “Reservation” within Article III(H) of the LTBB Constitution are in fact the Tribe’s reservation lands. Because these lands include all of Harbor Springs, Michigan, the Tribal Court made a patently wrong legal conclusion when it determined that the children involved in the underlying child protective proceeding did not reside on the LTBB Reservation.
C. All lands included within the Tribe’s Reservation under LTBB tribal law constitute lands within a “reservation” under ICWA.
The Tribal Court, Judge Kronk presiding, also made a grave legal error when it concluded that the children’s residence within Harbor Springs, Michigan was not within the “reservation” as that term is defined under the Indian Child Welfare Act (“ICWA”). The Tribal court stated that “the children were not found on the ‘reservation’ within the meaning of the ICWA.” Order Following Transfer Hearing at 4. On the contrary, any location within the area defined as the Tribe’s “Reservation” under Article III(H) of the LTBB Constitution is also deemed to be within a “reservation” under ICWA. *281 ICWA’s definition of “reservation” provides the following:
“reservation” means Indian country as defined in section 1151 of title 18, United States Code [18 U.S.C. § 1151] and any lands, not covered under such section, title to which is either held by the United States in trust for the benefit of any Indian tribe or individual or held, by any Indian tribe or individual subject to a restriction by the United States against alienation.
25 U.S.C. § 1903(10) (emphasis added).
The definition of “reservation” under ICWA is therefore not limited to trust lands, but encompasses all Indian country as defined in the Major Crimes Act, 18 U.S.C. § 1151. The Tribal Court’s analysis omitted the first subsection of Indian country contained in 18 U.S.C. § 1151. The full definition of 18 U.S.C. § 1151 is included below with the first subsection emphasized in bold:
Except as otherwise provided in sections 1154 and 1156 of this title, the term “Indian country”, as used in this chapter, means (a) all land within the limits of any Indian reservation under the jurisdiction of the United States Government, notwithstanding the issuance of any patent, and, including rights-of-way running through the reservation, (b) all dependent Indian communities within the borders of the United States whether within the original or subsequently acquired territory thereof, and whether within or without the limits of a state, and (c) all Indian allotments, the Indian titles to which have not been extinguished, including rights-of-way running through the same.
18 U.S.C. § 1151 (emphasis added).
Thus ICWA defines “reservation” to include 18 U.S.C. § 1151, and § 1151 unambiguously includes all lands within an Indian reservation, from trust to fee patented lands in non-Indian communities. As a result, all lands encompassed within the definition of “Reservation” in Article III(H) of the LTBB Constitution also qualify as “reservation” lands under ICWA, including lands that are held in fee simple and not held in trust.
D. Sections V and VI of the LTBB Child Protection Statute are valid and binding on the Tribal Court and are not unconstitutional under tribal law or preempted by the Indian Child Welfare Act.
The Tribal Court also concluded that certain provisions of the LTBB Child Protection Statute were unconstitutional under tribal law and preempted by the Indian Child Welfare Act. The Appellate Court finds that these legal conclusions are erroneous and reverses them.
First, the Tribal Court concluded that the LTBB Child Protection Statute expanded the definition of “reservation” beyond the definition provided by the Indian Child Welfare Act, and that this expansion was “null and void because of federal preemption principles.” Order Following Transfer Healing at 5. In fact, the Tribe’s Child Protection Statute defines “reservation” in precisely the same way that “Reservation” is defined in Article III(H) of the LTBB Constitution. As part B of this opinion explained above, the definition of “Reservation” under the LTBB Constitution does not expand beyond the definition of “reservation” in ICWA. Rather, all lands encompassed within the definition of “Reservation” in Article III(H) of the LTBB Constitution also qualify as “reservation” lands under ICWA, including lands that are held in fee simple and not held in trust. There is therefore no basis for the Tribal Court’s conclusion that the Child Protection Statute expands the definition *282 of reservation beyond ICWA’s definition, and there is no basis for concluding that the alleged expansion is “null and void because of federal preemption principles.”
Because the Tribal Court concluded that the LTBB Child Protection Statute expanded the definition of “reservation” beyond ICWA’s definition, it also found that the statute effectively “violated [parents’] equal protection rights under federal and tribal law” by imposing an added limitation on their right to veto transfers in cases where the veto right is permitted under ICWA. Order Following Transfer Hearing at 7. The Tribal Court also concluded that the expansion of the definition of “reservation” beyond ICWA’s definition resulted in stripping the Tribal Court of its power to decline transfers in cases where the power was recognized under ICWA. The Tribal Court concluded that this limitation on its discretion to decline to transfer cases to Tribal Court violated the separation of powers principle affirmed in Article VI(D) of the LTBB Constitution. Each of these two concerns flowed from the Tribal Court’s erroneous legal conclusions about a presumed mismatch between “reservation” under tribal law and “reservation” under ICWA, however. Because no such mismatch exists, the Tribal Court’s conclusions that the Child Protection Statute violates parents’ civil rights and that it violates the separation of powers principle are both wrong.
CONCLUSION
For the reasons described above, the Appellate Court rejects the reasoning and analysis of the Tribal Court’s Opinion Following Transfer Hearing. The legal conclusions are set aside and shall not be considered binding precedent on future cases.
DECIDED AND APPROVED BY A UNANIMOUS APPELLATE COURT.